# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**LARRY D. ODUM,**

      **Petitioner,**

**-vs-**                                                    **Case No. 5:16-cv-54-Oc-36PRL**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS, et al.,**

      **Respondents.**

_____/

## ORDER DENYING PETITION

Petitioner, a Florida prisoner proceeding *pro se*, initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Dkt. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 4). Thereafter, Respondent filed a response (Dkt. 6), to which Petitioner replied (Dkt. 8). Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Habeas Rule 8(a). After thorough review, the petition will be denied.

## I. PROCEDURAL HISTORY

After a jury trial in Lake County, Petitioner was found guilty of one count of vehicular homicide and one count of reckless driving causing serious bodily injury. (Respondents' Exhibit A, pp. 104-05, hereafter "Exh."). The evidence presented at trial demonstrated that Petitioner drove his truck, at excessive speed, through a red light and into a minivan, killing one person and seriously injuring another. (Exh. B). Petitioner had alcoholic beverages inside of his vehicle and smelled of alcohol, according to evidence presented at trial. (*Id.*) However, the state trooper on scene testified at trial that Petitioner did not appear under the influence of alcohol, passed all field

sobriety tests, and offered to submit to a breath alcohol test. (*Id.*)

On March 5, 2008, Petitioner was sentenced as a Habitual Felony Offender[1] to 20 years imprisonment on the vehicular homicide charge, followed by a consecutive 5-year sentence for the reckless driving charge. (Exh. A, pp. 119-23). On March 10, 2008, Petitioner was re-sentenced to a 25-year prison term on the first count and a concurrent 5-year sentence on the second count. (Exh. A, pp. 124-128.). Petitioner filed a motion to correct sentencing error, which was denied. (Exh. A, p. 155, Exh. C).

Petitioner appealed to the Fifth District Court of Appeal, arguing that the trial court erred in sentencing him as a Habitual Felony Offender without presenting the issue to the jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Exh. D). The Fifth District Court of Appeal *per curiam*, without opinion, affirmed Petitioner's conviction and sentence on March 17, 2009. (Exh. F); *Odum v. State*, 4 So.3d 1258 (Fla. 5th DCA 2009). Mandate issued April 8, 2009. (Exh. G).

On February 26, 2010, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, which was struck by the court as facially insufficient. (Exhs. H, I). Petitioner filed an amended Rule 3.850 motion on June 7, 2010, raising four claims of ineffective assistance of counsel and one claim of trial court error. (Exh. J). The postconviction court summarily denied the claims on January 10, 2011, and Petitioner appealed. (Exhs. L, M.) The Fifth District Court of Appeal reversed and remanded on the trial court error issue, holding that the oral pronouncement of 20 years on count one followed by a consecutive 5-year sentence on count two did not conform with the written sentence of 25 years on count one with a concurrent 5-year sentence on count two.

---

[1] *See* Fla. Stat. § 775.084 (permitting enhanced sentences for defendants designated as Habitual Felony Offenders).

(Exh. O.) Petitioner unsuccessfully sought discretionary review in the Florida Supreme Court. (Exhs. R, X ).

On October 27, 2011, the trial court re-sentenced Petitioner to its original sentence: 20 years imprisonment on count one, followed by a consecutive 5-year term on count two. (Exh. Y.) On January 23, 2012, Petitioner filed another motion to correct illegal sentence, arguing that the 5-year sentence on count two should run concurrent to the sentence for count one. (Exh. Z.) The trial court held a hearing on March 9, 2012 and granted the motion, re-sentencing Petitioner again, this time to 25 years on count one followed by a concurrent 5-year sentence on count two. (Exhs. AA, BB).

On August 31, 2012, Petitioner was granted a belated appeal following his re-sentencing. (Exh. CC .) In his belated appeal, Petitioner argued that the trial court did not overcome the presumption of vindictiveness when it increased his original sentence on count one from 20 to 25 years. (Exh. DD). The Fifth District Court of Appeal affirmed *per curiam* without opinion on June 11, 2013. (Exh. FF ). Petitioner subsequently filed a Motion for Reduction and Modification of Sentence (Exh. JJ), which the trial court denied (Exh. KK). Petitioner filed another motion to correct illegal sentence (Exh. LL), arguing that his re-sentencing to 25 years on count one violated his right to be free from double jeopardy. The trial court denied his motion on January 30, 2014, finding that because he had previously raised the issue and it was decided against him, he was procedurally barred from raising the issue again. (Exh. MM). Petitioner appealed, and on July 15, 2014, the Fifth District Court of Appeal *per curiam* affirmed without opinion. (Exh. PP).

In January 2014, Petitioner filed a state habeas petition (Exh. RR) alleging ineffective assistance of appellate counsel. The Fifth District Court of Appeal denied the petition on July 9, 2014. (Exh. VV). Meanwhile, in May 2014, Petitioner filed a third motion to correct illegal

sentence. (Exh. WW). The trial court dismissed the motion, finding that it lacked jurisdiction to rule on the motion because he had an appeal pending. (Exh. XX). The Fifth District Court of Appeal affirmed *per curiam* without opinion on October 28, 2014. (Exh. CCC).

Petitioner filed a fourth motion to correct illegal sentence on November 12, 2014, alleging that his Habitual Felony Offender designation was illegal because the trial court did not "orally sentence" him as a Habitual Felony Offender on March 5, 2008. (Exh. GGG). The trial court dismissed the motion, again finding that it lacked jurisdiction because Petitioner had a pending appeal. (Exh. HHH).

Petitioner filed a "Consolidated Third and Fourth Motion to Correct Illegal Sentence" on January 28, 2015. (Exh. III). The trial court denied the motion, noting that at the March 5, 2008, sentencing, "[t]he trial judge specifically stated the Defendant 'would be considered for purposes of this sentencing and any further sentencing to be a habitual offender.'" (Exh. KKK). Petitioner appealed, and the trial court's denial was affirmed. (Exh. NNN). Mandate issued January 15, 2016. (Exh. OOO).

Petitioner filed the present habeas petition on January 27, 2016. (Dkt. 1). He asserts three grounds of trial court error and four grounds of ineffective assistance of trial counsel. (*Id.*)

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal

4

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the

prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**C. Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner

"'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 *U.S.C. § 2254(b)(1); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal

habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

### III. ANALYSIS

**Ground One**

Petitioner contends that his Habitual Felony Offender sentence denied him the right to trial by jury in violation of the Sixth Amendment. (Dkt. 1). Petitioner argues that the jury did not make

a factual finding that his Habitual Felony Offender designation was necessary for the protection of the public, and therefore his sentence is unconstitutional.  Petitioner unsuccessfully raised this claim on direct appeal.  (Exhs. D, F).

The Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), the Supreme Court determined that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

Florida's Habitual Felony Offender statute permits the trial court to decline to sentence a defendant as a habitual offender if the court determines that the sentence is unnecessary to protect the public.  Fla. Stat. § 775.084(4)(e).  As the Court concluded in Petitioner's previous habeas petition in a separate case, "[t]he fact that the statute allows the judge to decline to sentence a defendant as a habitual offender is not the same as a finding that a defendant does qualify.  Under the statute, the judge did not increase Petitioner's punishment based on any fact other than Petitioner's prior convictions."  *Odum v. Sec'y, Dept. of Corr.*, 2012 WL 3670263, at *3 (M.D. Fla. Aug. 27, 2012).

In addition, Florida district courts of appeal have long held that neither *Blakely* nor *Apprendi* apply to a defendant's qualification for Habitual Felony Offender sentencing.  *See, e.g., Tillman v. State*, 900 So. 2d 633, 634 (Fla. 2d DCA 2005) (noting "numerous Florida decisions holding that *Apprendi* does not apply" to Habitual Felony Offender determinations, and that *Blakely* does not require a jury finding either).

Petitioner has failed to show that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Accordingly, Ground One does not warrant federal habeas relief.

To the extent Petitioner is challenging whether he met the criteria under Florida law for designation as a Habitual Felony Offender, Ground One warrants no federal habeas relief because the claim asserts no federal constitutional claim. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

**Ground Two - Sub-claims A and C**

In Sub-claim A, Petitioner contends that trial counsel was ineffective for failing to present evidence to support the defense theory of careless (as opposed to reckless) driving. Petitioner argues that trial counsel mentioned the careless driving theory in opening remarks, but never presented any evidence in support of it. (Dkt. 1, pp. 22-24). In Sub-claim C, Petitioner contends that trial counsel interfered with his right to testify on his own behalf, misadvising him that his prior driving under the influence convictions would be presented to the jury if he testified on his own behalf. (*Id.* at pp. 32). In rejecting these claims on post-conviction review, the state court wrote:

> However, the record demonstrates that the Defendant was questioned as to whether he would testify and he indicated he did not wish to testify. The Court also inquired regarding witnesses for the defense, and the only issue raised by the Defendant at that time concerned the condition of the truck. He did not mention anything concerning his current version of events as alleged in his Motion.
>
> The discussion at trial occurred as follows:
>
> MR. CARRANZA: Your Honor, at this point in time, since the State has rested, we are not putting forward any witnesses.

11

THE COURT: Okay.

MR. CARRANZA: I have spoken at length with my client, Larry Odum, whether or not he would like to testify. And after speaking to (inaudible) several times, at this point in time it's my belief that he wishes to exercise his constitutional right to remain silent and not testify. Larry, is that right?

THE DEFENDANT: That's correct, Your Honor.

MR. CARRANZA: And we've discussed it at length; correct?

THE DEFENDANT: Yes, sir.

MR. CARRANZA: And you're doing this freely and voluntarily - -

THE DEFENDANT: Yes.

MR. CARRANZA: - - that you do not want to testify; right?

THE DEFENDANT: Yes, sir.

MR. CARRANZA: Okay.

MS. PURDY: And, Your Honor, just in an abundance of caution.

THE COURT: Yes, ma'am.

MS. PURDY: If the Court would inquire if the defense has discussed the fact that Mr. Odum has the right to testify should he wish to testify. He doesn't have to testify obviously. And that nothing that his attorney has said to him has forced him in any way to give up that right to testify should he wish to do that. And finally, if you could inquire if there's any other witnesses that he wished to present.

THE COURT: Okay. You've fully discussed this with your lawyer and you understand your rights that you - - the fact that you're not going to be testifying cannot be held against you?

THE DEFENDANT: Yes, sir.

THE COURT: Okay, and you've discussed that, and if you feel you've gotten good advice from your attorney?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. Been able to answer all your questions?

THE DEFENDANT: Pretty much.

THE COURT: Okay. And you made that position, knowing - -

THE DEFENDANT: Yeah, yes, sir.

THE COURT: - - being fully informed; you're making a fully informed decision? Regarding the possibility of other witnesses, you've also discussed that with your attorney?

THE DEFENDANT: 1 don't really have too many witnesses. I mean, you know, just the fact that, you know, there wasn't a dent in the side of the pickup at the time.

THE COURT: Uh-huh. (Indicating affirmatively.)

THE DEFENDANT: I mean, my - - you know, the owner of the pickup behind me can verify that, you know, there wasn't a side dent in the back of the bed of the truck at the time and the truck was in mint condition.

MR. CARRANZA: And, Your Honor, we've discussed there minor issues, and I discussed with Larry at length about elements that the State has to prove in order for them to prove their case, and I explained to him that those types of minor details really would not in any way affect the jury's decision. I explained to him basically under all the case law, such as State v McCrary that Ms. Purdy was talking about, what exactly the State has to prove, including all the elements, et cetera, et cetera. And with those types of witnesses, l basically explained to Larry that that wouldn't play a factor in the final decision of the jury. Is that right?

THE DEFENDANT: That's correct, Your Honor.

MR. CARRANZA: And, Larry, that we went over all the depositions, we went over the case law, we went over the elements, and both you and I came to the conclusion what was the best theory for this case and what was the best defense for this case. Right, Larry?

THE DEFENDANT: Right, yeah.

(Exh. L) (internal citations omitted).

As to the careless driving defense, trial counsel did present the theory in both his opening and closing statements. In opening remarks, trial counsel told the jury:

Now, I'll be the first to say that the night in question, my client was driving carelessly and he was driving negligently. However, the question before you, as Ms. Purdy said, is, was he driving recklessly, which is what makes vehicular homicide and reckless driving causing serious bodily injury a crime. And I believe the evidence will show that he was not. I repeat, he was not driving recklessly. Like I said, the evidence is going to show that he is not going to be driver of the year and that he was driving carelessly, but I believe the evidence will show that he was not driving recklessly.

(Exh. B, Trial Transcript Vol. I, p. 186).

In closing, trial counsel stated:

To prove the crime of vehicular homicide the State must prove more than a failure to use ordinary care. In my opening remarks I believe one of the first things I said was that my client was driving carelessly that day. He failed to use ordinary care. He was careless and I believe that's undisputed.

However, that's where it stops. Failure to use ordinary care is right here. Recklessness is right here. This what makes that accident that happened the night of February 11, 2006 a crime. However, I believe that the evidence has shown that his driving pattern that night is right here, failure to use ordinary care. It hasn't gotten here. And that span that you have between failure to use ordinary care and recklessness, that span right there is called not guilty on both of these charges because they must prove moth cases beyond and to the exclusion of each and every single reasonable doubt that my client drove recklessly that night.

(*Id.* at Vol II, p. 417).

There was evidence presented at trial to support the careless driving defense – it was dark and misting at the time of the crash; Petitioner ran a red light, etc. Petitioner fails to point to what evidence trial counsel should have presented that would have changed the jury's verdict.

As to his claim of misadvice regarding testifying on his own behalf, this claim is refuted by the record. The trial court made a thorough inquiry of Petitioner regarding his decision to testify, any additional witnesses he may want to call. Petitioner did not raise any of the claims he now pursues in his federal habeas petition.

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of these

claims was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Sub-claims A and C do not warrant federal habeas relief.

**Ground Two - Sub-claim B**

Petitioner contends that trial counsel was ineffective for failing to hire an expert to refute the State's expert on the issue of whether the Petitioner was speeding at the time of collision. Petitioner also argues that trial counsel failed to properly cross-examine the State's expert. (Dkt. 1). In rejecting these claims on post-conviction review, the state court wrote:

> However, the record shows the Defendant agreed with counsel regarding the best theory and best defense for the case. The record also shows the Defendant agreed with counsel regarding witnesses for his defense. Moreover, the Defendant's allegations in this regard are speculative and he shows no reasonable probability that an expert hired by the defense could have refuted the State expert's opinion that the Defendant was speeding. Further, whether the Defendant was speeding at the time was only one factor that the jury could have considered in determining the Defendant's guilt. There is no reasonable probability that the outcome of the proceedings would have differed had defense counsel hired an expert regarding this matter.

(Exh. L) (internal citations omitted).

At trial, the state called Gary Stephens, an expert in accident reconstruction, to testify. He testified that "[t]he sole contributing factor to this traffic crash, based upon my reconstruction, was the failure to observe a traffic control device and an excessive speed for the posted limit in that area." (Exh. B, Trial Transcript Vol II, p. 354). Stephens estimated that Petitioner was traveling at a minimum of 58-61 miles per hour at the time of the crash, above the posted limit of 45 miles per hour. (*Id.*) Petitioner's trial counsel had deposed Stephens prior to trial. On cross-examination, trial counsel questioned Stephens regarding the statistical percentage of validity of his estimated speed. (*Id.* at 356). Trial counsel pointed out an inconsistency between Stephens' estimate at the deposition (55-63mph) versus trial (58-61mph). (*Id.* at pp. 356-58).

Petitioner contends that trial counsel should have hired an expert to help him meaningfully challenge Stephens' testimony and potentially testify at trial. (Dkt. 1, p. 28). Petitioner's assertions that the jury would have rendered a favorable verdict had trial counsel consulted and/or presented a defense expert are conclusory and speculative–other than potentially "educating" trial counsel, he offers no suggestion of what the expert would have testified to. The defense theory was that Petitioner may have been driving carelessly but not recklessly. (Exh. B, Vol. II, pp. 382-83). And, as the postconviction court pointed out, speeding was only one factor the jury could have considered in determining Petitioner's guilt. (Exh. L). Trial counsel's "decision not to call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen this strategy." *Dorsey v. Chapman*, 262 F.2d 1181, 1186 (11th Cir. 2001). Nor was Petitioner prejudiced, in light of the other unfavorable evidence against him (i.e., citation for running a red light, eyewitness testimony of the crash).

Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Sub-claim B does not warrant federal habeas relief.

**Ground Two - Sub-claim D**

Petitioner contends that trial counsel was ineffective for failing to object to the presentation of evidence related to his consumption of alcohol around the time of the collision. (Dkt. 1). In rejecting these claims on post-conviction review, the state court wrote:

> [T]his claim is also without merit. The defense filed a motion in limine to preclude the State from admitting into evidence any testimony or other evidence relating to the Defendant's consumption or use of alcohol. The motion in limine was denied by the Court. The evidence was relevant and admissible as to the presence of alcohol in the Defendant's vehicle, the odor of alcohol emanating from the Defendant, and his attempts to remove the alcoholic beverages from his vehicle, demonstrating

consciousness of guilt.

(Exh. L) (internal citations omitted).

Here, trial counsel did seek to keep the evidence of the presence of alcohol at the accident from the jury – he filed a motion in limine, arguing that "the evidence of any alcohol in this case [would] be so prejudicial that it would not allow my client to have a fair trial." (Exh. B, Trial Transcript Vol. I, pp. 14-15). The trial court denied the motion, noting that it assumed trial counsel would make a motion at the appropriate time during the trial to preserve the issue. (*Id.* at p. 15).

During the trial, Aaron Byrd, a witness to the crash, testified that when he went to check on Petitioner immediately following that crash, Byrd "smelled a strong odor of alcohol on his person" and he saw "several . . . beer cans and beer bottles on the passenger floorboard" of Petitioner's truck. Petitioner also put the empty cans and bottles in the back of his truck after he exited the vehicle. (Exh. B, Trial Transcript Vol. II, pp. 211-15). Trial counsel did not object during Byrd's testimony.

Assuming, *arguendo*, that trial counsel was deficient for failing to object to Byrd's testimony contemporaneously, Petitioner has not demonstrated that but for that error, the jury would have found him not guilty. Petitioner was not charged with any alcohol-related crime. Florida Highway Trooper Hector Colon testified at trial that although he smelled the odor of alcohol on Petitioner's clothing at the scene of the crash, Petitioner "passed every single one of" the field sobriety tests administered at the scene. (Exh. B, Trial Transcript Vol II, p. 249-50). Trooper Colon testified that he did not think Petitioner was impaired by alcohol, and that Petitioner agreed to submit to a breath alcohol test. Trooper Colon did not administer the test because he did not believe Petitioner was under the influence of alcohol, despite the odor of alcohol. (*Id.* at pp. 251-52).

As Petitioner himself states, the "primary issue of dispute at trial was, on the night in

question, whether Odum was driving recklessly, at an excess of 10-15 miles over the posted speed limit, thus being the factor which caused the automobile accident." (Dkt. 1, p. 25). Petitioner was issued a citation for running a red light at the scene, and an accident reconstruction expert testified that Petitioner was driving between 58 and 61 miles per hour, above the posted 45-mph speed limit. (Exh. B, Trial Transcript Vol II, p. 354). Petitioner has not demonstrated that there is a reasonable probability that the jury would have found him not guilty but for the testimony of Mr. Byrd, especially where the officer on the scene testified that Petitioner was not impaired by alcohol and an accident expert testified that Petitioner was speeding.

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Sub-claim D does not warrant federal habeas relief.

**Ground Three**

In Ground Three, Petitioner argues that his March 10, 2008, re-sentencing violated double jeopardy principles because although his overall term of imprisonment did not increase, his term on Count 1 increased from 20 to 25 years. (Dkt. 1, pp. 36-39).[2] In rejecting this claim on post-conviction review, the state court wrote:

> In this case, the State moved to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800. The Court did not err in subsequently re-sentencing the Defendant because it did not increase the amount of time that he will spend in the Department of Corrections and did not exceed the Court's original sentencing intent. Moreover, claims of trial court error should be raised on direct appeal. The

---

[2] Though not a part of the record before the District Court of Appeal or this Court, there was a hearing associated with the March 10, 2008 resentencing. At Petitioner's March 9, 2012 re-sentencing hearing, the State described the result of that hearing: "we determined that based on the case law . . . that, in fact, stacking habitual sentences, according to the cases, was improper. So at that point, based on the Court's statement that they intended for Mr. Odum to more time for the second count, the Court restructured its sentence to the twenty-five years as a habitual offender with a five-year concurrent sentence." (Exh. BB, p. 5).

Defendant has failed to demonstrate that he is entitled to relief as to this ground as well.

(Exh. L) (internal citations omitted).

However, the Fifth District Court of Appeal reversed and remanded on this issue, writing:

> The record reflects that the orally pronounced sentence was twenty years on count one and five years on count two, to be served consecutively, but the written sentence is twenty-five years on count one and a suspended five-year sentence on count two, to be served concurrently. In denying Odum's rule 3.850 motion, the court concluded that the sentence, as written, was proper because the overall term of incarceration (twenty-five years) was the same as the orally pronounced sentence, so that Odum suffered no prejudice. Although the lower court's resolution was practical, Odum correctly asserts that the trial court was obliged to execute a written sentencing document that conformed to the oral pronouncement of sentence. Odum further contends that any increase in the twenty-year sentence on count one would violate double jeopardy. The parties to this appeal appear to assume that the originally announced sentence was illegal because the two counts were to run consecutively, but that issue is not before us. The trial court must enter a sentencing order that matches the oral pronouncement. If Odum then seeks to have that sentence declared illegal and, if he succeeds, the trial court may correct the sentence to conform to the original sentencing intent. **If the sentences on the two counts must, by law be concurrent, not consecutive, upon resentencing, we see no reason why the trial court could not impose the concurrent twenty-five year sentence**, or any other lawful concurrent sentence, so long as it does not violate the limitations of *North Carolina v. Pearce,* 395 U.S. 711 (1969). *See Golz v. State,* 722 So. 2d 210, 210-11 (Fla. 2d DCA 1998) (Altenbernd, J., concurring).

(Exh. O) (emphasis added). After this opinion was handed down on September 9, 2011, Petitioner was re-sentenced on October 27, 2011; and again on March 9, 2012, with a hearing. (Exhs. Y, AA, BB) . Petitioner's most recent sentence, and the one he is currently serving, is a Habitual Felony Offender sentence of 25 years imprisonment on count one, with a concurrent 5-year sentence as to count two. (Exh. AA.). This sentence was affirmed on direct appeal, and via Petitioner's appeals of his unsuccessful state habeas petition and motions to correct illegal sentence.

In *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), the Supreme Court held that "whenever a judge imposes a more severe sentence upon a defendant after a **new trial**, the reasons for his doing so must affirmatively appear" and it imposed a rebuttable presumption of vindictiveness if a more severe sentence is imposed after a new trial. (emphasis added). In *Alabama v. Smith*, 490 U.S. 794 (1989), the Court narrowed the scenarios where the presumption of vindictiveness in resentencing applied.

Petitioner's total term of imprisonment is, and always has been, 25 years. His re-sentencings never increased his overall sentence and do not run afoul of *Pearce*. As the Fifth District Court of Appeal noted, it "could see no reason why the trial court could not impose the concurrent twenty-five year sentence, or any other lawful concurrent sentence . . ." (Exh. O). This is precisely what the trial court did on March 9, 2012.

Petitioner has failed to show that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

In Ground Four, Petitioner alleges that his current sentence as a Habitual Felony Offender is illegal "because the HFO was not orally pronounced on either count" at the original March 5, 2008, sentencing, and therefore his most recent Habitual Felony Offender sentence violates double jeopardy. (Dkt. 1, pp. 41-47). Petitioner raised this issue in his Third, Fourth, and "Consolidated" Third and Fourth motion to correct illegal sentence. (Exhs. WW, GGG, III).

In its ruling on Petitioner's "Consolidated" motion, the trial court found the argument

without merit: "the trial judge made the oral pronouncement at the end of the trial. The trial judge specifically stated the Defendant would 'be considered for purposes of this sentencing and any further sentencing to be a habitual offender.'" (Exh. KKK, p. 3; Exh. G, Trial Transcript Vol. III, pp. 478-85). The trial court's ruling was affirmed by the Fifth District Court of Appeal.

Petitioner's argument is refuted by the record. (Exh. G, Trial Transcript Vol. III, pp. 478-85). After a discussion of his qualification for a Habitual Felony Offender designation, the trial court did in fact orally pronounce him as a Habitual Felony Offender at his March 5, 2008, sentencing. (*Id.*) The trial court also orally pronounced him as a Habitual Felony Offender at his March 9, 2012, re-sentencing:

> On Count Number I, the defendant is sentenced to twenty-five years Department of Corrections as a habitual felony offender. The Court finds, as previously, that he qualifies as a habitual felony offender. . . Count Number II, the defendant is sentenced to serve five years in the Department of Corrections as a habitual felony offender. These sentences to run concurrently, or at the same time.

(Exh. BB, pp. 14-15).

Petitioner has failed to show that the state court's denial of this claim was contrary to, or an reasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor was it an unreasonable determination of the facts and evidence before the state court. 28 U.S.C. § 2254(d). Accordingly, Ground Four does not warrant federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** is directed to enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case, since Petitioner cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Petitioner is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Ocala, Florida on March 20, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record